[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter was initially commenced by a notice of Condemnation and Assessment of Damages dated June 5, 1998 and filed on June 5, 1998, which Notice of Condemnation and Assessment of Damages concerned itself with certain property situated in the Town of Ledyard, County of New London, State of Connecticut on the easterly side of Colonel Ledyard Highway, Connecticut Route 117, also known as Iron Street, and at its intersection with Connecticut Route 214. The Notice of Condemnation and Assessment of Damages described the premises which were the subject of the condemnation and contained a statement assessing the damages assessed thereto in the amount of $2,500.00 on behalf of the Commissioner of Transportation. Along with the Notice of Condemnation and Assessment of Damages an appearance was filed on behalf of the State.
Notice was initially sent both to the owners of record of the CT Page 264 property and the Chelsea Groton Savings Bank, the then mortgagee, setting forth a statement to the effect that a deposit in the amount of $2,500.00 had been made with the Clerk of the Court.
On July 7, 1998 one of the parties in interest, David Holdridge, filed an appearance and on August 11, 1998 an appeal from the condemnation in taking was filed with the Clerk of the Court.
Appealing from the assessment of damages and applying for a reassessment thereto, this appeal was signed and executed by David Holdridge, Paul Holdridge, Jr., and Sara S. Holdridge all of Ledyard. On August 11, 1998 David, Paul and Sara Holdridge moved for a reference to a state referee and exchange of appraisal reports.
Paul Holdridge, Jr. filed an appearance with the Clerk of the Court on August 11, 1998, as did Sara S. Holdridge.
On December 16, 1999 Paul Holdridge, Jr., David A. Holdridge and Sara S. Holdridge appeared as did the representative of the Commissioner of Transportation in the form of his counsel and appraiser. Paul Holdridge, Jr., et al appeared on a pro se basis and without counsel. Sara S. Holdridge had appeared by filing an appearance but did not physically attend the proceedings conducted on December 16, 1999.
The Court makes the following findings of fact.
The witness, Robert H. Silverstein, who appeared on behalf of the appellants testified with regard to his examination and research into the subject property. The witness Silverstein has the following qualifications. He is a member of the Appraisal Institute MAI Designation. He is a Connecticut general appraiser certified, #000565. He is certified by the Rhode Island General Appraiser authority, certification #A00296G. He is certified in New York, New York General Certification #22216. He holds a Connecticut real estate broker's license. He has been a realtor member in the New London Board of Realtors since 1990. His education consists of a master of business administration degree, University of Connecticut, 1981, bachelor of arts, University of Connecticut 1973. He has taught various real estate courses over the years and attended a variety of seminars. He has been a full-time appraiser with the agency that he is now associated with. He has been a partner in that firm since 1981. He has done over CT Page 265 1,500 written appraisals throughout Connecticut, Massachusetts and Rhode Island.
He has appeared and testified as an expert witness in the courts in Connecticut, New York, and in the United States federal court.
Counsel for the Commissioner of Transportation stipulated as to the qualifications of Robert Silverstein. Mr. Silverstein appraised the subject premises on June 5, 1998 and determined a value therefore. He reinspected the premises again in January of 1999. Mr. Silverstein, in his appraisal activities, valued the premises before the taking and after the taking.
The witness Silverstein identified the property as being in a commercial zone. The area in question has retail and commercial uses. A detailed traffic count with regard to the intersection of the highways where the subject premises are located was testified to.
There is presently situated on the property an improvement which is devoted to the use of being a United States post office. The premises are subject to a lease with the U.S. Postal Service.
Mr. Silverstein considered the value of the land only as affected by the subject condemnation and taking. Mr. Silverstein's value in his report considers the valuation of the land only.
The court was asked to judicially notice that the improvement on the property consisted of a United States post office outlet, the designated hours thereof, the uses to which it is put; to wit, collecting and processing mail.
The witness, David Holdridge, testified. He stated he was one of the owners of record of the subject premises and identified the Notice of Condemnation Assessment of Damages and the appeal therefrom. He testified that at the present time the premises are free and clear of any mortgage or encumbrance, the same having been paid off.
Paul Holdridge, Jr. testified. He identified the signatures on the appeal complaint, asked that the court accept the Silverstein appraisal, identified the signature of Sarah Holdridge who was not physically present in the court. CT Page 266
On behalf of the Commissioner of Transportation, the witness Thomas R. Krawiec appeared. Appraiser Krawiec's qualifications were stipulated to by the parties. Appraiser Krawiec testified as to the manner of his appraisal, his research, a detailed statement with regard to the value of the damages, the nature of the improvements thereon. Krawiec's report was reviewed by three superiors. Krawiec valued the damages as to the taking at $3,175.00.
From Plaintiff's Exhibit No. 1, the Silverstein report, the Court observes that the appraised property consists of a total of 43,485 square foot acre site located on the southeast corner of Connecticut Routes 214 and 117. The site is rectangular in shape with frontage of 169' on the east side of Colonel Ledyard Highway, 59' on the corner and 231' on the south side of Connecticut Route 214. A rear width of 213' and a depth of 240' on the south. The land is slightly above grade and generally level with a slight rise up from Route 117. Access into the site is only provided from Rt. 117. The site is improved with a 5,840 square foot one-story brick building leased to and occupied by the U.S. Postal Service. The building is about 22 years old and appears to be in average to good condition. Other site improvements include about 20,100 square feet of paved parking and loading area, well, septic and utility connections. The improvements are not affected by the taking.
The property assessment of the entire parcel including the improvements thereon is $183,050.00 of which $83,650.00 is allocated to the land. The property is located within the LCDD Ledyard Center Design District as designated by the zoning regulations of the Town of Ledyard. The property is a legal conforming use both before and after the taking. The highest and best use of the site is for office, retail, or mixed use development in character with the village commercial area. The current use is an appropriate use.
Silverstein took into account in arriving at his valuations six parcels; including two separate parcels of property on Flanders Road in East Lyme, another parcel on Route 128, Route 2 in North Stonington, property located at 77 Voluntown Road in Stonington, property located at 729 Meridian St. Ext. in Groton, and 4 Fairway Drive in Ledyard.
Mindful of the size of the property, Silverstein appraised the CT Page 267 land value only before the taking at $119,600.00. The land value after the taking at $111,100.00 for a difference of $8,500.00. In addition thereto, Silverstein ascribed $500.00 for loss of vegetation, arriving then at a total damage in his opinion of $9,000.00. In the Silverstein appraisal, the land area square footage before the taking was 43,485, times the square foot valuation of $2.75 rounding the figure out to $119,600.00. After the taking the land only premises consisted of 40,255 square feet at $2.75 a square foot for a value of $110,701.00. In addition, 205 square feet of the land is encumbered by a slope easement. Its unit value is reduced by 25% to $2.06 per square foot. This then is the method by which Silverstein arrived at his total damages as indicated; to wit, $9,000.00.
From the defendant's exhibits, Defendant's Exhibit A, a copy of the certificate of taking, Defendant's Exhibit B, copy of a certain map entitled, "Town of Ledyard, map showing land acquired from Paul Holdridge, Jr. et al by the State of Connecticut, Department of Transportation, Connecticut Route 214, September 1997." The map is extremely detailed and shows the premises with precision, the area taken and the highways and all other relevant data. Defendant's Exhibit C, the appraisal by Thomas R. Krawiec describing the subject premises the portion taken therefrom and the initial valuation by appraiser Krawiec under date of December 11, 1997.
The Defendant's Exhibit D is a detailed voluminous land appraisal report partial take identifying the premises and establishing and assessing the damages to the total amount as of December 5, 1998 at $3,175.00. The resort to various other premises for the purpose of establishing value are contained within this report as well as various clear and well defined colored photographs of the subject premises from a variety of different angles and perspectives.
This exhibit contains also a detailed statement of the qualifications of Thomas R. Krawiec, which even though his qualifications have been stipulated to, is impressive. Mr. Krawiec's qualifications include the following: a bachelor's degree in sociology in 1977, a liberal arts degree from the Hartford Community College in 1974. He is a certified general appraiser for the State of Connecticut, certificate number 00000349. Mr. Krawiec has testified in court on other land-related matters as an expert witness in matters pertaining to the State of Connecticut. He has been with the Connecticut Department CT Page 268 of Transportation, Office of Right of Way, Appraisal Division since December of 1991. He has held a variety of other positions with the department, not only as an appraiser but formerly as a property agent. In addition, he is an independent fee appraiser, he has worked with the Prudential Connecticut Realty in Old Saybrook, has been a sales agent, has worked with Liberty Real Estate in Chester, Connecticut and has been a sales agent for them and various and sundry other qualifications in the appraisal field including being a former director of Accessible Equity Mortgage Company in Tolland, Connecticut.
Mr. Krawiec in arriving at his total damage assessment, has broken the matter down in the following fashion. He values the lot before any taking at $35,000.00 for a square foot figure of 80 cents a square foot. He also determines the total land area as being 43,485 square feet. After the taking he finds the unencumbered land area total at 40,255+ square feet using the 80 cents a square foot figure. He notes the encumbrance by the slope easement, 205 square feet times the 80 cents a square foot, minus contributory value of trees and vegetation of $500.00. He ascribes no value to the right to construct driveway area, right to install bituminous concrete lipcurbing, right to pave parking area, right to install catch basin and pipe, right to install pavement markings. After the taking he arrives at a total land value then of $31,825.00. The difference then being $35,000.000 less $31,825.00 for his total damage assessment of $3,175.00.
The Court is persuaded that the square foot unit value established by the witness Silverstein is more realistic and more properly reflects the actual value of that portion of the premises that have been taken incident to the condemnation proceedings.
The Defendant Commissioner's Exhibits E1-3 and F1-2 are further very clear, color photographs that depict the subject premises from a variety of vantage points and appear clearly to define the area which has been effected by the taking.
On the basis of the exhibits and Defendant's Exhibit B, the map showing the land acquired from Paul Holdridge, et al, the Court finds that the State has taken a 3,025 square foot portion of the site at the corner of Routes 214 and 117. The State also acquired a slope easement of 205 square feet plus a right to remove an island and trees on an area of 139 square feet. Additional rights acquired included right to construct a driveway of 628 square CT Page 269 feet, a right to install 160 feet of bituminous concrete lip-curbing, a right to pave a parking area of 194 square feet, a right to install a catch basin and pipe and a right to install pavement markings. This taking does not affect the existing building. The site is located at the main intersection in the village area of Ledyard. There is no public water or sewers available in the area. Traffic along both Routes 117 and 214 has increased markedly since the opening of Foxwood Resort and Casino in 1992.
One of the defendant's exhibits entitled "Land Appraisal Report" has contained therein a number of very clear good quality colored photographs showing the subject area before the taking. When one compares those photographs with Defendant's Exhibit E1-3 and E1 and 2, a series of high quality colored very clear photographs that show the premises after the taking, one might be inclined to the view that a certain degree of improvement to the site had been achieved. The E1-3 and F1 and 2 photographs show the installation of a new concrete sidewalk admittedly requested by the Town of Ledyard rather than the appellants, shows highway markings, the erection of a new traffic control signal, the paved areas and the openings for the drains referred to.
The Court finds that the appellants, David Holdridge, et al, are the owners of record of the subject premises by virtue of the exhibits presented including a copy of the deed in the Ledyard Land Records, Volume 127 at page 60.
The Court finds that the appellants, Paul Holdridge, Jr., David A. Holdridge and Sara S. Holdridge are aggrieved by the taking.
On the basis of the testimony and the exhibits presented to the Court, the Court finds the value of the property as a result of the taking to be to the total amount of $6,000.00.
Austin, J.